**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STEFAN GEORGIEV PETRUNOV,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-01291

Judge Robert W. Gettleman

Magistrate Judge Laura K. McNally

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A**

Plaintiff, Stefan Georgiev Petrunov ("Petrunov" or "Plaintiff"), submits this memorandum in support of his Motion for Entry of Default and Default Judgment under Federal Rule of Civil Procedure 55 against the Defendants identified in the First Amended Schedule A (the "Defaulting Defendants"), on Count I of the Complaint for copyright infringement. Excluded from this motion are defendants who have been dismissed.

## BACKGROUND

Plaintiff is the owner of the copyright registrations that protect the creative content of the Petrunov Works. [1] at ¶ 8. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Petrunov Works, and the Petrunov Works are recognized and associated by consumers, the public, and the trade as being associated with and authorized by Plaintiff. *Id.* at ¶¶ 9, 13, 14. No one other than Plaintiff and Plaintiff's licensees is authorized to manufacture, import, export, advertise, create derivative works from, offer for sale, or sell any goods utilizing the Petrunov Works without Plaintiff's express written permission. *Id.* at ¶ 15.

On information and belief, Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff products while selling inferior imitations. *Id.* at ¶¶ 6, 11. The Defendant Internet Stores share unique identifiers establishing a logical relationship among them. *Id.* at ¶ 7. Each Defaulting Defendant conducts business throughout the United States, including within the State of Illinois and this judicial district, through fully interactive commercial internet stores, and each targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold infringing products to consumers in this District. *Id.* at ¶¶ 2, 16.

Plaintiff filed this action on February 4, 2026. [1], [2]. On February 13, 2026 the Court found that Plaintiff had made a prima facie showing permitting joinder and granted Plaintiff's ex parte motion for a temporary restraining order, including service of process by e-mail and electronic publication. [18]. The Temporary Restraining Order issued the same day. [19]. Plaintiff posted the $10,000 bond on February 17, 2026. [22].

Plaintiff completed service in the manner the Court authorized on February 24, 2026 and filed proof of service that day, making answers due March 17, 2026. [25]. On February 26, 2026, following a hearing at which no Defendant appeared, the Court entered a Preliminary Injunction. [26], [27]. No Defendant has entered an appearance, answered, or otherwise defended at any point in this action. Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Plaintiff now moves under Rule 55(a) and Rule 55(b)(2) for entry of default and default judgment against the Defaulting Defendants, for an award of statutory damages under 17 U.S.C. § 504(c)(2) for willful copyright infringement, for a permanent injunction, and for release of the restrained funds in the Defaulting Defendants' marketplace financial accounts.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over the Defaulting Defendants because they directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without the benefit of an evidentiary hearing, a plaintiff bears only the burden of making a prima facie case for personal jurisdiction; the plaintiff's asserted facts are accepted as true and

factual disputes are resolved in its favor). This Court has already found that Plaintiff made the showing necessary to support the entry of injunctive relief against these Defendants. [18], [26].

## II. SERVICE OF PROCESS WAS PROPER BECAUSE THE ADDRESS OF EACH DEFAULTING DEFENDANT IS NOT KNOWN

Each Defaulting Defendant is located in the People's Republic of China. Plaintiff has developed a per-defendant record, submitted with this Motion, establishing that the address of each Defaulting Defendant is not known within the meaning of Article 1 of the Hague Service Convention. The Convention therefore does not apply, and service by electronic mail under this Court's Order was proper.

### A. The Governing Framework

The Seventh Circuit has held that an email sent to a defendant abroad can constitute service of process subject to the Hague Service Convention, and that where the Convention applies to a defendant in China it forecloses service by email, because China has objected to service under Article 10(a). *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 2026 WL 1502198, at *6 (7th Cir. May 29, 2026). But the Convention "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. Whether that exception is satisfied is the antecedent question, and in *Kangol* the Seventh Circuit did not answer it. It observed that district courts handling Schedule A cases "typically require" plaintiffs to make "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address" before deeming an address unknown, quoting *NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021), and then expressly declined to resolve whether the plaintiff before it had met that standard, remanding for the district court to decide whether the Convention applied at all. *Kangol*, 177 F.4th at 799, 2026 WL 1502198, at *4.

The standard this District applies is therefore the *NBA Properties* standard, and it is conjunctive. A plaintiff must both ascertain the address a defendant has put forward and verify it; identifying a string of characters on a seller page is not verification. *See Deckers Outdoor Corp. v. A AO*, No. 25 C 13065, 2026 WL 1802901, at *4-*5 (N.D. Ill. June 23, 2026) (applying *NBA Properties* and holding that the Article 1 showing belongs in the motion itself and is judged as of when the plaintiff moved, not when the plaintiff is later challenged).

This District has also identified what an inadequate record looks like. In *Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024), the plaintiff asserted that an address was unknown because counsel could not find it on Google Maps. The court held that "this is not enough to show reasonable diligence," reasoning that "Google's search products do not consistently work in China," and the defendant defeated the showing by producing Baidu results for the listed address. *Id.*; *see Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022). *Peanuts* thus supplies both the trap and the corrective: reasonable diligence "generally requires that the plaintiff ha[ve] attempted to obtain [the defendant's] address in a variety of ways," 347 F.R.D. at 328, and in China that variety must include the resources that actually function there. Plaintiff's record here is built to that standard, and it does not stop at maps.

**B. Plaintiff's investigation**

For every Defaulting Defendant, Plaintiff's investigation proceeded in two stages, and each step was contemporaneously captured. First, on August 11, 2026, an investigator took the address exactly as the Defendant itself disclosed it to the marketplace, in the original script, and searched it on (1) a Google web search, (2) Google Maps, and (3) Baidu Maps (百度地图), capturing the marketplace page from which the address was taken and the resulting map screens.

Declaration of Yanling Jiang (the "Jiang Declaration") at ¶¶ 3-8; Ex. A; Ex. B. Baidu Maps, the resource *Peanuts* identified as the corrective to Google-only research, was separately captured for every Defendant.

Those searches could not verify a single disclosed address. For twenty-two Defendants (Nos. 1, 2, 8, 9, 12, 13, 15, 16, 18, 19, 23, 30, 31, 42, 45, 46, 47, 50, 51, 53, 54, and 55), the address did not resolve to the street and unit disclosed at all; the maps placed it no closer than a district, a village, or a road. Jiang Decl. ¶ 5; Ex. A; Ex. B. For eight (Nos. 17, 21, 25, 28, 33, 34, 39, and 52), a point could be placed at the address but corresponded to no business or mailing address of the Defendant. For seven (Nos. 6, 10, 20, 27, 36, 40, and 48), the search returned a plaza, a shopping center, a hotel, a park, a school, or a block of commercial buildings, never the unit the Defendant gave. Those three groups account for all thirty-seven. Before Plaintiff opened the corporate registry, then, the record already showed that not one disclosed address could be verified as a real, current location connected to the Defendant that gave it. The registry inquiry that follows was undertaken for a different and narrower purpose: a map result can show that an address exists, but it cannot show whose address it is, and Article 1 turns on whether the address is the Defendant's.

Second, Plaintiff checked each Defendant against Tianyancha (天眼查), the Chinese corporate-registry database, using the verbatim business name the Defendant itself disclosed to the marketplace, searched exactly as disclosed and without translating or converting it to Chinese characters first. Jiang Decl. ¶¶ 9-11; Ex. C. Where a verbatim string returned no result, a labeled fallback term was run as a secondary check and every conclusion resting on such a term is flagged in Exhibit C as an inference. For every entity the registry returned, Plaintiff compared the registered address of record against the disclosed address and separately queried the 经营异

常名录 (Abnormal Operation Register), including for entries recording that the entity is "unreachable at its registered address" (通过登记的住所或者经营场所无法联系的). Jiang Decl. ¶ 12; Ex. C. Every candidate match at a disclosed address was then re-run against five further registry datasets, including the entity's own annual reports and the postal address reported in them, and each candidate address was independently researched against open-source map, real-estate, and registry-aggregator material to determine what actually occupies it. Jiang Decl. ¶¶ 13-14. The Chinese-language records were read by counsel personally. Jiang Decl. ¶ 2.

**C. The address of each defaulting defendant is not known**

The investigation answered the Article 1 question in the negative for all thirty-seven Defaulting Defendants. The grounds recur in six identifiable patterns, set out below with the Schedule A numbers to which each applies. The patterns overlap, and many Defendants fail on more than one; the complete, individualized basis for each Defendant appears in Exhibits A and C, which the Court is respectfully asked to treat as the operative per-defendant showing.

For the first pattern, the registered address of record is somewhere else entirely. For twenty Defendants (Nos. 8, 10, 12, 17, 19, 20, 21, 23, 27, 28, 30, 31, 33, 36, 39, 40, 47, 48, 51, and 53), the entity the registry returns for the Defendant's own disclosed business name is registered at an address in a different district, a different city, or a different province from the address the Defendant gave the marketplace. Ex. C. Defendant No. 10 discloses a shopping-mall unit in Putian, Fujian, while the matching registered entity sits in a village in Binzhou, Shandong, roughly 1,400 kilometers away. Defendant No. 17 discloses an address in Chengdu, Sichuan, while its matching entity is registered in Guangshui, Hubei. Defendant No. 12's matching entity is a seafood company registered in Yantai, Shandong, against a disclosed Fujian mall unit. A Hague request nominates one address. The Chinese Central Authority does not

investigate which of two irreconcilable addresses is correct, and it does not choose between them. Where the Defendant's own disclosure and the Defendant's own registry record contradict each other, Plaintiff has ascertained two candidate addresses and verified neither as the Defendant's.

In the second pattern, the Chinese authorities have themselves recorded that the entity cannot be reached at its registered address. For seven Defendants (Nos. 1, 6, 8, 21, 23, 28, and 40), the entity matched to the Defendant carries a current, unremoved listing on the 经营异常名录 entered by the competent municipal market supervision bureau on the express ground that the entity could not be contacted at its registered domicile or place of business. Ex. C. Defendant No. 1's matched entity was listed on May 15, 2026 by the Fuyang Yingzhou District Market Supervision Administration; Defendant No. 6's on July 3, 2026 by the Bengbu Huaishang District bureau; Defendant No. 21's matched entity twice, on April 3 and April 22, 2025. This is not Plaintiff's characterization of the address. It is the Chinese government's own published finding, on the only address a Hague request could nominate, that the address does not reach the entity. An address that the issuing state's own registry records as non-functional is not a "known" address within Article 1 in any sense that would give a Central Authority request a chance of success.

For the third identifiable pattern, the matched entity no longer exists. For five Defendants (Nos. 9, 15, 18, 33, and 45), the entity that matches the disclosed business name has been cancelled (注销) or its license revoked (吊销). Ex. C. For several of these the cancelled entity is the only entity registered at the disclosed address, which means the address verifies to a legal person that no longer exists. A dissolved entity has no legal personhood on which a Central

Authority can serve, and there is no successor identified anywhere in the registry to name in its place.

For the fourth pattern, the disclosed name resolves to a swarm of similar entities and none of them is at the disclosed address. For nine Defendants (Nos. 1, 8, 20, 21, 23, 28, 36, 40, and 54), the verbatim romanized business name the Defendant disclosed maps onto multiple distinct registered companies whose Chinese characters differ but whose pinyin is identical. Ex. C. Defendant No. 23's disclosed name resolves to more than twenty such entities; Defendant No. 28's to twelve; Defendant No. 40's to eleven; Defendant No. 21's to ten. None of the candidates examined is registered at the disclosed address. Plaintiff cannot determine which is the Defendant, and a Hague request that names the wrong one serves a stranger. Practitioner authority describes precisely this pattern, and the related problem of a request that names a defendant only by a romanized trade name that corresponds to no registered legal identity, as one in which service through the Chinese Central Authority is assured to fail, because the executing local intermediate people's court cannot reconcile the identifier it is given to a registered entity. *See* Aaron Lukken, Chinese Company Names, Flawed Addresses, and the High Likelihood of Hague Service Failure, Hague Law Blog (Mar. 2024).

In the fifth pattern, the only verifiable address is a registration slot, not a place of business. For four Defendants (Nos. 2, 13, 16, and 25), the registry does place the matched entity at the disclosed address, but the address is not a premises. For Defendants Nos. 2, 13, and 25 the registered seat is a numbered workstation or mail slot in a documented mass-registration scheme: Defendant No. 2's seat is workstation "-10054 工位" on the seventeenth floor of a building where a separate trading shell occupies slot "1708 室-1-1708 工位"; Defendant No. 13's is slot "B00258（自主申报）" on a logistics-park floor where public records document a long run of

adjacent numbered slots (B00050, B00098, B00119, B00275, B00293, B00459, B00533, B00545, B00659, B00677, B00725, B00736, B00742, among others) held by newly formed, identically capitalized single-shareholder trading shells. Ex. C. For Defendant No. 16 the registered address of record is literally the premises of a different named company, so that any judicial document delivered there would be received or refused by an unrelated business rather than by the Defendant. Ex. C. In each instance Plaintiff can name a cell in a registration agent's scheme, or another company's front door, but not a location at which the Defendant may be found.

For the sixth pattern, there is no registry entity, or no registry address, to name at all. For seven Defendants (Nos. 34, 42, 46, 50, 52, 54, and 55), the disclosed business name searched verbatim returns no registered entity, or the entity it returns has no registered address on record. Ex. C. Two of these are the Defendants' own doing. Defendant No. 46 disclosed a business name consisting of the corrupted fragment "gshanghu)", evidently the tail of a parenthetical; Defendant No. 50 disclosed an unparseable string. Neither can be searched against the registry at all, and the defect originates entirely in the Defendants' own disclosures. Defendant No. 42's matched entity exists but its registry record carries no registered address whatsoever, and the address the Defendant disclosed self-describes as an address "only used as the address for delivery of legal documents of commercial entities" rather than a business seat.

Each of these grounds independently establishes, on a per-defendant basis, that Plaintiff ascertained the address the Defendant put forward, took the further step of testing it, and could not verify it as a real location connected to that Defendant. The address of each Defaulting Defendant is accordingly not known within the meaning of Article 1, the Convention does not apply, and email service under this Court's Order was proper under Rule 4(f)(3). *NBA Props.*,

549 F. Supp. 3d at 796; *Peanuts*, 347 F.R.D. at 328; *cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022).

Service by email also independently satisfies due process. Service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Each Defaulting Defendant operates an interactive marketplace storefront and maintains a marketplace-verified email address, which is the feature that made email "a more reliable method of service" than an unverified physical address in *NBA Properties*, 549 F. Supp. 3d at 797.

**D. Plaintiff's record includes the further step that was missing in *Li***

Plaintiff addresses directly a recent decision in this District. In *Li v. The Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. 1:26-cv-03970, [63] (N.D. Ill. Aug. 11, 2026), the court granted a Rule 12(b)(5) motion and vacated a preliminary injunction, holding that a plaintiff who had entered the defendant's Amazon business address into Google Maps, obtained five candidate results, and stopped there had not been reasonably diligent. The court faulted the plaintiff for never taking "the next reasonable step of actually investigating those addresses." *Id.*

That is not this record, in two respects. First, Plaintiff did not stop at maps. Plaintiff took the next step into the source that determines what a Chinese address means, the corporate registry itself, and then took a further step past the registry's face into the registry's abnormal-operation findings, the entity's own annual filings, and open-source research into what physically occupies each candidate address. It is that further work, not the map results, that carries the showing for the great majority of the Defaulting Defendants. Second, and more fundamentally,

for these thirty-seven Defendants there is no candidate address for an investigator to visit. Where the registry places the Defendant's entity 1,400 kilometers from the disclosed address, where the entity has been cancelled, where the disclosed name resolves to twenty homophones and none of them is at the address, where the address is a numbered mail slot in a registration agent's block, or where the Defendant disclosed a corrupted fragment of a name, an on-foot visit or a test mailing would not identify the Defendant's address, because the defect is not that the address is hard to reach. It is that the address is not shown to be the Defendant's. Plaintiff says so plainly rather than suggesting that a visit was performed or that one was available.

## III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff filed the Complaint on February 4, 2026 [1], alleging copyright infringement in Count I. The Defaulting Defendants were served in the manner this Court authorized on February 24, 2026. [25]. Despite service, the Defaulting Defendants have ignored these proceedings and have failed to plead or otherwise defend. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not infants or incompetent persons and are not in the military service of the United States. *Id.* at ¶¶ 3-4. Entry of default against the Defaulting Defendants is therefore appropriate.

## IV. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Upon

default the factual allegations of the complaint relating to liability are taken as true and may not be challenged. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Far more than twenty-one days have passed since service and no responsive pleading has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A).

**A. Copyright infringement**

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Copyright protection extends to derivative works, which Section 101 defines as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Plaintiff owns the registered copyrights in the Petrunov Works. [1] at ¶¶ 3, 5, 8. Plaintiff alleged that the Petrunov Works have been infringed by the Defaulting Defendants. *Id.* at ¶¶ 17-22. Because the Defaulting Defendants have failed to respond or otherwise plead, those allegations are accepted as true. Judgment should enter on Count I for willful copyright infringement.

**B. Statutory damages are appropriate**

Under 17 U.S.C. § 504(c)(1), a copyright owner may elect to recover statutory damages of "not less than $750 or more than $30,000 as the court considers just," and where infringement is willful, § 504(c)(2) permits an award of up to $150,000. Plaintiff elects statutory damages. That election matters here for a reason beyond quantum. A default establishes liability, but the allegations as to the amount of damages are not deemed admitted, and a court must ordinarily

ascertain damages with reasonable certainty rather than accept them from the pleading. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Congress supplied statutory damages precisely so that an owner need not prove actual harm, and an election under § 504(c) therefore supplies the certainty that a compensatory claim on a default record would lack.

The Seventh Circuit's framework for statutory damages under § 504(c) is set out in *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Infringing conduct is willful where the defendant knows that his conduct constitutes infringement or shows reckless disregard of the copyright owner's rights. *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). Knowledge need not be proven directly and may be inferred from conduct; willful blindness is knowledge in copyright law. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003).

Here the Defaulting Defendants had knowledge that their activities constituted infringement, or at a minimum acted in reckless disregard of Plaintiff's rights, because they intentionally paired their listings with goods derived from images in Plaintiff's copyrighted works. The infringement occurred over the internet, which enlarges the appropriate award because the internet made the infringement widely available and the conduct correspondingly difficult to police. A finding of willfulness and an award of one hundred thousand dollars ($100,000) against each Defaulting Defendant is warranted. *See, e.g., Ronald Martin West v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12025 (N.D. Ill. Dec. 11, 2025); *Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025).

**C. Plaintiff is entitled to permanent injunctive relief**

Plaintiff does not rest its request for an injunction on the fact of default. A default judgment "establishes liability," but "it does not answer whether any particular remedy is

appropriate," and that principle "applies with equal if not greater force" to equitable relief. *e360 Insight*, 500 F.3d at 604. Plaintiff therefore addresses each factor.

The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the movant must prove actual success on the merits rather than a likelihood of success. *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998); *Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996). The remaining considerations are the absence of an adequate remedy at law, irreparable harm, the balance of hardships, and the public interest. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

Plaintiff has proved actual success on the merits. Plaintiff owns the registered copyrights in the Petrunov Works, and the accused products use those protected works or are derived from their distinctive creative content. Declaration of Stefan Georgiev Petrunov at ¶ 5. On the default record, liability on Count I is established as a matter of law. *Di Mucci*, 879 F.2d at 1497.

There is no adequate remedy at law and Plaintiff will suffer irreparable harm in the absence of permanent injunctive relief. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, devalue the Petrunov Works by associating them with inferior goods, and undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity, which threatens Plaintiff's ability to develop further artwork and further markets for the existing works. These are recognized irreparable harms for which monetary compensation is inadequate. *See Warner Bros. Entertainment, Inc. v. WTV Systems*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007). The harm is compounded here by the same facts that defeat Article 1: these Defendants cannot be located at

the addresses they gave, several operate through cancelled entities or registration-agent mail slots, and several are recorded by their own government as unreachable. A damages judgment against a defendant who cannot be found is not an adequate remedy, and nothing short of an injunction restrains the conduct.

The balance of hardships tips in Plaintiff's favor. As willful infringers the Defaulting Defendants are entitled to little equitable consideration, and one who adopts the protected work of another acts at his own peril and cannot complain of being ordered to stop. *Warner Bros.*, 824 F. Supp. 2d at 1014-15. The only hardship an injunction imposes is the loss of the ability to continue infringing.

Issuance of the injunction is in the public interest. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). The public also has an interest in not being deceived as to the source of the goods offered to it. *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950). Both interests are served by the requested relief.

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against the Defaulting Defendants identified in First Amended Schedule A, award statutory damages of one hundred thousand dollars ($100,000) against each Defaulting Defendant under 17 U.S.C. § 504(c)(2), enter a permanent injunction in the form submitted, and order that the funds restrained in the Defaulting Defendants' financial accounts operated by Amazon Payments, Inc. and Temu, LLC, together with any newly discovered accounts, be released to Plaintiff in partial satisfaction of the judgment.

DATED: August 31, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website.

*/s/ Keith A. Vogt*
Keith A. Vogt, Esq.